OPINION *Page 2 
{¶ 1} On August 22, 2005, appellee, the Licking County Department of Job and Family Services, filed a complaint for temporary custody of Jeffrey Rehart born July 28, 2004, alleging the child to be dependent. Mother of the child is appellant, Tosha Rehart; father is Alexander Garner. An adjudicatory hearing before a magistrate was held on November 3, 2005. By decision filed November 7, 2005, the magistrate found Jeffrey to be a dependent child, and placed the child in appellee's temporary custody. The trial court approved and adopted the magistrate's decision on same date.
 {¶ 2} On July 14, 2006, appellee filed a motion for permanent custody based upon the parents' failure to comply with the case plan. A hearing before a magistrate was held on September 18, 2006. By decision filed September 29, 2006, the magistrate recommended permanent custody of the child to appellee. The trial court approved and adopted the magistrate's decision on same date. Appellant filed an objection to the magistrate's decision on December 5, 2006. By judgment entry filed December 6, 2006, the trial court denied the objection, finding it was untimely filed. Notwithstanding the untimely filing, the trial court reviewed the transcript and determined the magistrate's decision was supported by competent, credible evidence.
 {¶ 3} Appellant filed an appeal and this matter is now before this court for consideration. Assignment of error is as follows:
 I {¶ 4} "THE GRANT OF PERMANENT CUSTODY IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE." *Page 3 
 I {¶ 5} Appellant claims the trial court erred in granting permanent custody of the child to appellee. We disagree.
 {¶ 6} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (February 10, 1982), Stark App. No. CA-5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. CE. Morris Co. v. Foley Construction (1978),54 Ohio St.2d 279.
 {¶ 7} R.C. 2151.414(E) sets out the factors relevant to determining permanent custody. Said section states in pertinent part as follows:
 {¶ 8} "(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 {¶ 9} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist *Page 4 
the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 {¶ 10} "(16) Any other factor the court considers relevant."
 {¶ 11} R.C. 2151.414(B) enables the court to grant permanent custody if the court determines by clear and convincing evidence that it is in the best interest of the child. R.C. 2151.414(D) sets out the factors relevant to determining the best interests of the child. Said section states relevant factors include, but are not limited to, the following:
 {¶ 12} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 13} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 14} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999; *Page 5 
 {¶ 15} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 16} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 17} Erin Frost, the ongoing case worker, testified when she first became involved with appellant, she "was homeless, she had been living from place to place with her son. She was struggling financially. Her mental health, she has a cognitive disability; inappropriate friends, and lack of parenting skills." T. at 44. Thereafter, a case plan was implemented. T. at 45. Although appellant had recently secured a new apartment, Ms. Frost testified "there are a lot of sex offenders living in that neighborhood. A lot of people with criminal backgrounds in general." T. at 48-49. Appellant moved in with her boyfriend that she has known for three months. T. at 49. Appellant has a history of picking inappropriate friends. Id. She would "hang out" with several people with criminal backgrounds. T. at 50. Because of her cognitive disability, appellant "has very poor decision-making skills." T. at 51. For example, she would go to the emergency room for a stomachache instead of going to her family doctor. Id. Appellant has been diagnosed with a mood disorder, but her progress is unknown "due to her inconsistent record with therapy." T. at 52. Ms. Frost testified she has observed appellant with Jeffrey, and appellant is lacking "simple, basic everyday parenting skills." T. at 54. In order to help appellant improve her parenting skills, appellant was referred to Help Me Grow and Pathways. Id. Over the past year, Ms. Frost has seen very little progress. Id. Ms. Frost testified Mr. Garner has not contacted her or seen Jeffrey since *Page 6 
November, 2005. T. at 42. Jeffrey is currently living with a foster family and is doing very well. T. at 56-57. The foster family is a potential long-term placement, and Jeffrey has bonded with the foster family. T. at 57.
 {¶ 18} Lisa Black, a service coordinator for Help Me Grow, has been involved with appellant since September, 2004. T. at 11-12. Ms. Black testified her concerns involved appellant's "decision-making, choice of friends, safety." T. at 13. Many times, appellant would put the needs of her friends first before Jeffrey's. Id. A lot of the people appellant "was getting involved with had criminal backgrounds." Id. Between September, 2004 and August, 2005, appellant lived in approximately four different places. T. at 14. As far as appellant's parenting skills, Ms. Black opined appellant was easily distracted. T. at 17. Ms. Black felt appellant "saw Jeffrey as a playmate versus a son/parent relationship." Id. As of the date of the hearing, Ms. Black was concerned about appellant's ability "to provide a safe environment for him, housing. The people that she might have coming in and out of her home. Safety issues as far as just being able to keep an eye on him and not getting distracted either by the people or the environment." T. at 20. The Help Me Grow program assisted appellant with parenting education. T. at 22. Over an almost two year period, appellant had trouble retaining the information she had been given. T. at 23. Appellant would temporarily demonstrate parenting skills, "but there was no longevity to it." Id. Ms. Black opined the neighborhood wherein appellant lives is unsafe. T. at 24. "[T]here's a lot of drug activity in that area. There's also a lot of residents who have sex offenders in that area. I know that there's also a lot of gun activity in that area." Id. *Page 7 
 {¶ 19} Lind Sandin, a parent educator with Pathways, was concerned with the type of people appellant was exposing to Jeffrey. T. at 32. After speaking with appellant about her concerns, appellant defended her choices because she felt her friends were safe. T. at 33. Ms. Sandin testified there were "concerns that when she [appellant] was responsible for him on her own that she wouldn't be able to do multiple things, the unexpected, like a telephone call might distract her from supervising him." T. at 35.
 {¶ 20} The guardian ad litem recommended permanent custody. T. at 117.
 {¶ 21} As noted by the guardian ad litem, the magistrate and the trial court, appellant clearly loves her son. T. at 117; Judgment Entry filed December 6, 2006. However, Ms. Frost, Ms. Black and Ms. Sandin have all expressed concerns with appellant's inability to parent day-to-day on her own. Appellant suffers from a cognitive disability and is unable to retain the parenting skills taught to her. Appellant has had trouble maintaining suitable housing and picks inappropriate friends, jeopardizing Jeffrey's safety.
 {¶ 22} Upon review, we find sufficient, competent and credible evidence in the record to support the trial court's findings by clear and convincing evidence, and find the trial court did not err in determining the best interests of the child was best served by terminating the parental rights and granting permanent custody to appellee.
 {¶ 23} The sole assignment of error is denied. *Page 8 
 {¶ 24} The judgment of the Court of Common Pleas of Licking County, Ohio, Juvenile Division is hereby affirmed.
 Farmer, J., Gwin, P.J. and Delaney, J. concur. *Page 9 
JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Licking County, Ohio, Juvenile Division is affirmed. *Page 1